DORÉ, Judge.
This suit is on behalf of Beverly A. Itt-man, doing business as Ittmari Brothers, as a custom broker of the City of New Orleans. In his petition, he claims that as custom broker, at defendants’ request, he performed services in entering and clearing -defendants’ vessels, the “John Patty” and the “Elena”, and their cargoes, through the U. S. Customs Service, and paid therefor certain fees. For his services and such fees, he claims that there is due to him the sum of $937.77. ’ His suit is against Morris, Frank and Anthony Voltaggio and Nouga Babin, individually, and doing business as the Coastal Shrimp Company, a comercial partnership domiciled in the Parish of St. Mary, and allegedly- composed of the aforesaid four individuals. Frank Voltaggio was not served but he filed an answer signed and verified by him. Anthony A. Voltaggio and Morris Voltaggio were served personally but made no answer and no appearance, and no preliminary default was ever entered against them. Nouga Babin was served personally and he filed an answer on his own behalf, and on behalf of the Coastal Shrimp Company.
The answer of Nouga Babin is a general denial of the allegations of plaintiff’s petition, and further answering, he states as follows:
“That neither he nor the Coastal Shrimp Company at any time owned vessels named the ‘John Patty’ or the ‘Elena’ but that these vessels belonged to a commercial partnership known as Voltaggio Brothers or to one of the individual partners thereof, your defendant not knowing the exact one.
“That your defendant or the Coastal Shrimp Company did not at any time transact any business with Ittman Brothers and is in no wise indebted unto them.
“That defendant is informed, believes and therefore avers that the plaintiff well knew that the Boat ‘John Patty’ and the Boat ‘Elena’ did not belong either to him or the Coastal Shrimp Company and that the said Boats belong to the Voltaggios or to their partnership known as Voltaggio Brothers and pláintiff herein transacted his business *348 with the said Voltaggios and/or Voltaggio Brothers and has at all times looked to them for payment and knows or should have known the said Nouga Babin and/or the Coastal Shrimp Company was in no wise indebted to it.”
A separate answer was filed by Coastal Shrimp Company containing the same averments as the answer of Nouga Babin.
Frank Voltaggio in his answer avers positively that he never engaged in business under the name and style of Coastal Shrimp Company, and he denies all of the material allegations of plaintiff’s petition.
The case was tried only as to the Coastal Shrimp Company, Nouga Babin and Frank Voltaggio. After trial of the case, the trial judge, for written reasons assigned, came to the conclusion that no liability has been shown as to the defendants Coastal Shrimp Company and Nouga Babin, but he did find that liability was shown as to Frank Voltaggio, and rendered judgment as follows: “Let there he judgment dismissing plaintiff’s claim against the Coastal Shrimp Company and Nouga Babin, and in favor of the plaintiff and against Frank Voltaggio, as prayed for.”
Plaintiff has appealed from the judgment, urging that it should be amended so as to be in favor of plaintiff, not only against Frank Voltaggio, but also against his brothers, Morris and Anthony, and against Nouga Babin and the Coastal Shrimp Company in the full sum of $937.77, on the theory that the services were performed on behalf of Coastal Shrimp Company and that the individuals were partners therein. Plaintiff urges that in the event that the Court should find that the services were not performed’ for Coastal Shrimp Company, and its partners, then in that event, there should be judgment against Morris and Anthony Voltaggio individually for the full sum claimed and that the judgment against Frank Voltaggio should be affirmed. '
It is clear from the evidence that the plaintiff, as custom broker, did engage in clearing shipments of shrimp coming into this country on the vessels “John Patty” and “Elena”, and one shipment by plane, and it further appears that the value of his services and fees connected therewith, were proven as set forth in itemized statement contained in the record and marked P-2. It is also shown by the evidence that the Voltaggio Brothers operated the vessels and brought in the shrimp and that apparently they operated in the name of Coastal Shrimp Company.
The evidence shows that Coastal Shrimp Company was composed .of Morris Voltag-gio and Nouga Babin, and that Frank Vol-taggio was bookkeeper thereof. The partnership was dissolved on January 1, 1948. It is further shown by the evidence that the partnership was engaged in fishing for shrimp, but not in Mexico; that Morris Voltaggio handled most of the affairs for them, and that Babin only kept the boats in running condition and saw that they were properly manned. Babin, who, according to the trial judge, cannot read and write (although this is disputed by counsel for plaintiff, who argues that Babin signed checks for Coastal Shrimp Company, and is a successful and well informed business man, and that while his formal schooling was slight, there is no proof that he was not aware of what was going on due to illiteracy), testified positively that he did not know that the Voltaggio Brothers were dealing with the plaintiff in the name of Coastal Shrimp Company, of which he was a partner.
In any event, it is the contention of t'he plaintiff that the services he performed and the fees he paid even if not for the benefit of Coastal • Shrimp Company, he should recover from- that firm and its partners, on the theory that the firm permitted the Vol-taggios to use its name in their dealings with him without ever protesting. He states that he dealt with all three of the Voltaggio brothers as members of the partnership and that his bills were sent to the Coastal Shrimp Company without ever any return thereof or any questioning thereof.
It is the contention of plaintiff that Morris Voltaggio was originally a one-half owner of the Coastal Shrimp Company, as partners with Nouga Babin, but that later the one-half interest of Morris was split up amongst Frank and Anthony Voltaggio, his *349 brothers, and that Babin admitted this under cross-examination.
It is the further contention of the plaintiff that the Coastal Shrimp Company and Mr. Babin as partners therein cannot now deny and repudiate what they have originally accepted and benefitted by when they accepted plaintiff’s services for one and one-half years; that when a partner or partnership accepts the services, etc., of a third person over a long period of time, and berte-fits therefrom, he or it cannot be 'heard to reject or deny 'such services, etc., to the detriment of creditors and ■ third persons. Counsel for plaintiff is of the firm opinion that this is exactly what the defendants-appellees are attempting to do here, but that the Court, in furtherance of justice, should hold the Coastal Shrimp Company, and its four partners, liable and responsible to plaintiff-appellant.
In the alternative, plaintiff contends that even if Anthony and Frank Voltaggio were not actual partners, that they must be considered as partners by estoppel, háving 'held themselves out, and having been held out to the world, and to plaintiff particularly, as partners-in-fact; that if not partners-in-fact, but partners by estoppel, counsel contends that the acts of Anthony and Frank Voltaggio bound Coastal Shrimp Company to the plaintiff-appellant herein.
Plaintiff further contends that he never had any knowledge of the alleged partnership of Voltaggio Brothers, which, it is contended by Babin and 'by Coastal Shrimp ■Company, was the partnership which plaintiff was serving, and that no proof of the existence of such partnership has been introduced.
In spite of all the contentions of the plaintiff, the record shows that all correspondence was had between plaintiff and the Voltaggios, especially through Samuel Voltaggio, an attorney o'f Newark, New Jersey, and a brother of the three Voltag-■gios operating in Louisiana, and that this correspondence shows that the plaintiff was always referred to Morris Voltaggio for settlement of his account and not to the Coastal Shrimp Company or Nouga Babin. The burden of proving that Nouga Babin and the Coastal Shrimp Company partnership were the ones with which he was dealing is, of course, upon the plaintiff, and, obviously, the trial judge, who heard all the evidence, did not reach such a conclusion. The following excerpts from the trial judge’s written reasons for judgment appear to cover the situation rather clearly and do not appear to be erroneous conclusions :
“Plaintiff is very indefinite in pointing out the particular time and place wherein it was represented to him that he was dealing with the Coastal Shrimp Company. He, likewise, cannot identify the particular person, or persons, who made such representations. As a whole, however, we must conclude that he was led to believe, in a loose way, that the Voltaggios were all partners in the Coastal Shrimp Company.
“Plaintiff cites no legal authority to show that a partnership is liable for the debts contracted by third persons, who are not members of the partnership, in affairs that do not concern the partnership and in .which it is not 'benefited, simply because ■some member of the firm had knowledge of these -false representations, and did not protest.
“There is some jurisprudence in this state holding a partnership liable for the -debts incurred by an unauthorized person, on behalf of the partnership, where the partners had -knowledge that such unauthorized person was acting-for the partnership, and entered no protest. See State v. C. S. Jackson & Co., 137 La..931, 69 So. 7S1. No one can question the correctness of that rule, for the business transacted in such a case is on behalf of the -firm, and t<? hold otherwise would be to permit the partners to see first whether Of not the .firm is benefited 'by the transaction and then elect whether they will accept or reject it. This would foe strictly at the peril of the creditor, whom the partners had permitted to become involved by their representations,' or inaction.
“But such is not the case here. The business transacted was not for the Coastal Shrimp Company. To expose its assets to this claim, would be to hold that the assets *350 of all partnerships are exposed to all claims incurred !by all persons who may choose to deal in the name of a partnership, if the members of that partnership knew, or should have known, of that circumstance, and did not immediately protest. A cardinal rule in this state is that partnership assets are a common pledge for partnership creditors. To permit persons who never dealt with a partnership, and who certainly did nothing to contribute to its assets, to participate equally, with those who did, would be a violation of the cardinal rule, and would be most unfair.
“We are not concerned, generally, with the responsibility of the individual members of a firm, who, by their action, or in■,action, may cause another to extend credit to a third person in the belief that he was extending this credit to the partnership.
“But, if plaintiff is seeking to hold Babin, the only member of the partnership who is resisting the claim, liable on this theory, he can have no success-. Babin is not shown to ever have represented to plaintiff that the business plaintiff was transacting with the Voltaggios was for the benefit of the Coastal Shrimp Company, nor that the Voltaggios were partners in, or authorized to act for, the Coastal Shrimp -Company.
“Plaintiff’s principal evidence on this point is that Babin was called upon and responded, in receiving the load of shrimp that arrived by plane, the shrimp being consigned to the -Coastal Shrimp Company, and that the -bills plaintiff mailed to the partnership were never returned, nor protested.
“Mrs. Ittman, -plaintiff’s wife, handled for plaintiff through customs that load of shrimp. She states that she called Mr. Babin because the Voltaggios were all unavailable, and Babin’s telephone number had been given her, together with the Vol-taggios’, as the numbers- to call when she had business with the -Coastal Shrimp Co. Mr. Ba-bi-n states that he responded as a favor to the Volta-ggios. He knew it was their shrimp, and that they were all away. As he cannot read and write, he says that he did not know the cargo was consigned in the name ofdhe firm. Before the shrimp finally left the airport, one of the Voltag-gios arrived and took charge of them.
“Under these circumstances, it can hardly be said that Mr. Babin, -by these actions, justified plaintiff to conclude that the Vol-taggios were' authorized to do business on the credit of the Coastal Shrimp Company.”
 The fact remains that it has not been proved to a legal certainty that Coastal Shrimp Company was composed of any partners but Nouga Babin and Morris Vol.ta-ggio, and moreover, it has not been proved that Morris Voltaggio acted on behalf of said -partnership, but rather, it appears, as concluded by the trial judge, that he was acting on behalf of himself and his brothers, Frank and Anthony Voltaggio, individually. In view of those facts, it appears that Coastal Shrimp Company, and Nouga Babin, as a member thereof, were correctly found to be free of liability by the trial Court. We are of the opinion that the three Volta-ggio brothers were liable for the reason that the services were being performed on their -behalf, but since Anthony and Morris Voltaggio were personally served and no -preliminary -default was taken against them, it follows that they were not before the -Court at the time of trial. On the other hand, Frank Voltaggio actually filed an answer and, .the judgment against -him appears to be correct except that the judgment does not specifically set forth the amount awarded, and it should be recast so as to grant the amount of $937.77, plus legal interest and costs, and as thus recast, affirmed.
It may be noted further that there has been -filed in this Court a report -by -Charles J. Boatner, Attorney at Law, setting forth that he was appointed as curator ad hoc for the -defendants, Morris and Anthony Vol-taggio, and that in spite of his every effort, he was , unable to ascertain their whereabouts, and that his fee should be fixed at $25.00 for each of said defendants, to be taxed as costs and paid by the parties legally bound for same.
Since the'se two -defendants are not before the -Court, it would seem, that we are powerless to take any action on this report. *351 It is rather a matter for the lower court to fix the costs incurred in .this case.
For the reasons set forth herein,’ the judgment below is recast to read that there is judgment in favor of the plaintiff Beverly A. Ittman, d/b/a Ittman Brothers, and against the defendant, Frank Voltaggio, in the full sum of $937.77, and as thus recast, it is affirmed.